# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

GLADYS RIVERA CARRION, et al.

    Plaintiffs

                               **Civil No. 08-1498 (SEC)**

v.

UNITED STATES OF AMERICA, et al.

    Defendants.

## OPINION AND ORDER

Pending before the Court is the United States of America's ("Co-defendant") Motion for Summary Judgment (Dockets ## 125-127), and Plaintiffs' opposition thereto (Dockets ## 130, 132-33), together with supplemental motions each party filed at the Court's request. Dockets ## 139, 147-48, 149, 152-2. After reviewing the parties' filings and the applicable law, Co-defendant's motion is hereby **DENIED**.

**Procedural and Factual Background:**

As discussed in this Court's prior Opinions & Orders (Dockets ## 57, 107, 138), the present tortsuit was brought by Plaintiffs, minor Betsy Roman-Rivera ("Roman") and her mother, for medical malpractice against Dr. Maximino Miranda, Gurabo Community Health Center ("GCHC"), and Co-defendant. Roman received medical treatment at GCHC between the years 2000 and 2005 for a growth on her leg. Id.[1]  On January 1, 2004, while Roman was a patient of GCHC, the GCHC gained malpractice coverage under the Federal Tort Claim Act

---

[1] Co-Defendant moved to dismiss Plaintiffs' claim as time barred, but the Court denied the motion because the record at that juncture lacked the necessary evidence to accurately determine the date of accrual for Plaintiffs' claim. See Opinion and Order, Docket 57, p. 8, 10. Co-defendant's Motion for Summary Judgment makes no reference about this issue.

**CIVIL NO. 08-1498 (SEC)**

("FTCA"), 25 U.S.C. §§ 2671-2680.[2] The FTCA is therefore the statutory predicate for Plaintiffs' claim against Co-defendant.

The pertinent uncontested facts and the parties' specific allegations are uncomplicated. On January 22, 2001, Roman underwent surgery at the GCHC to remove a tumor from her right calf. See Opposition to Statement of Uncontested Facts ("OSUF"), Docket # 130, ¶ 1. On June 5, 2002, Roman underwent a second surgery for the same purpose. Id., ¶ 4. This time, however, the tumor removed from her right calf was referred to pathology for an exam, which revealed the tumor to be a dermatofibroma extended to the margins. Id., ¶ 6. Roman visited the GCHC again on August 25, 2003. Id., Exhibit XIII. During that visit, a doctor assessed her right leg's condition as a dermatofibroma with a second recurrence and concluded that a surgery consultation as well as a follow up appointment were necessary. Id.

The parties disagree, and the record is unclear, about the events that transpired thereafter. Plaintiffs allege that Roman never received a referral for a surgery consultation or a follow up appointment during or after the August 25, 2003 visit. See OSUF, ¶¶ 8-11. They allege instead that Roman went for walk-in consultations to the GCHC in at least six different occasions between August 25, 2003 and September 3, 2004, when, after a year of complete medical inaction, she was finally referred for a surgery consultation. Plaintiffs also allege that the doctors who examined Roman during August 25, 2003 and September 3, 2004 failed to inform them "about the risks of removing the tumor, its benefits, the available alternatives, []or the probable risks related to no [sic] treating the condition...." OSUF, ¶ 17. To support this

_____

[2] In pertinent part, the United States Department of Health & Human Services deeming letter stated: "The Bureau of Primary Health Care (BPHC), in accordance with Section 224(h) of the Public Health Service (PHS) Act, 42 U.S.C. 233(h)... deems the [GCHC] to be an employee of the Federal Government, effective January 1, 2004...." Docket # 26-2, p. 2.

**CIVIL NO. 08-1498 (SEC)**

allegation, Plaintiffs underscore the absence of entries detailing such disclosures on Roman's GCHC medical records. Id.

Co-defendant sets forth a different account of events. It states that Plaintiffs were informed about "the risk associated with leaving [Roman's] condition untreated," (Statement of Uncontested Facts ("SUF"), Docket # 127, ¶ 17) and disavows Plaintiffs' alleged walk-in visits. Id., ¶¶ 13-14.[3] In any event, on or about June 25, 2005, Roman underwent surgery for a third time, with part of her right calf having to be removed to treat a tumor. See Docket 147, Exhibit XIII.

Despite the factual dispute described above, Co-defendant has moved for partial summary judgment with a two-prong argument: (i) that the medical records, or lack thereof, about Roman's walk-in visits support its version of the facts; and (ii) that the medical treatment Roman received on the September 3, 2004 visit – a physical examination, palpation of the affected area and referral to an specialist – comports with the applicable standard of care. See Motion for Summary Judgment, Docket # 126, p. 5-6. Because, as explained below, the first prong of Co-defendant's argument is at odds with the exigencies of the summary judgment standard, the Court denies Co-defendant's motion without considering the second prong.

**Standard of Review**

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

---

[3]At a pre-trial conference, the Court ordered the parties to file simultaneous motions clarifying and supplementing three aspects about the present motion for summary judgment: (i) Roman's visits to GCHC between August 2003 and September 2004 and what, if any, tests and examinations were performed; (ii) GCHC's records about Plaintiffs' visits to GCHC between January 1, 2004 and September 3, 2004; and (iii) the parties' legal theories about GCHC's post-September 2004 liability. See Pretrial Conference Minute, Docket # 139. The parties' supplemental filings, however, restated most of the information provided in previous pleadings and thus failed to further the Court's understanding about the aforementioned issues.

**Civil No. 08-1498(SEC)**

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248(1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005).   In reaching such a determination, the Court may not weigh the evidence.  See Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994).  At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material.  See Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted).  "A  factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005) (quoting Garside, 895 F.2d at 48 (1st Cir. 1990)).

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. See Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).  Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. See Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).  Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgment as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (quoting Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).  "The non-movant must 'produce specific facts,

Civil No. 08-1498(SEC)

in suitable evidentiary form' sufficient to limn a trial-worthy issue....  Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); Medina-Muñoz, 896 F.2d at 8, quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.").

**Applicable Law and Analysis**

As stated above, Plaintiffs' cause of action against Co-defendant is premised on the FTCA. In pertinent part, this statute provides U.S. District Courts with exclusive jurisdiction to hear civil actions on claims against the United States for personal injury caused by negligent acts or omissions of federal government employees while acting withing the scope of employment. See 28 U.S.C. § 1346(b)(1). To adjudicate a claim brought under the FTCA, courts must apply the law of the place where the act or omission occurred. Id. There is no dispute that all the events surrounding the instant suit transpired in Puerto Rico; therefore, as noted by the parties, applicable Puerto Rico law governs Plaintiffs' claim.

With Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141, and the relevant Puerto Rico Supreme Court jurisprudence underlying its analysis, the First Circuit Court of Appeals has delineated the elements for a successful medical malpractice suit under Puerto Rico law: "To prevail against a doctor, a party must establish (1) the duty owed; (2) an act or omission transgressing that duty; and (3) a sufficient causal nexus between the breach and the harm." Rojas-Ithier v. Sociedad Española de Auxilio Mutuo y Beneficencia de Puerto Rico, 394 F.3d 40, 43 (1st Cir. 2005). Although expert testimony must be provided to aid the Court in determining the concurrence of these elements, see Marcano Rivera v. Turabo Med. Ctr.

**Civil No. 08-1498(SEC)**

P'ship., 415 F.3d 161, 167 (1st Cir. 2005), the legal contours of each element have been clearly demarcated.

The "duty owed" by a doctor is that of using "the same degree of expertise as could reasonably be expected of a typically competent practitioner in the identical specialty under the same or similar circumstances, regardless of regional variations in professional acumen or level of care." Rolon-Alvarado v. Municipality of San Juan, 1 F.3d 74, 77-78 (1st Cir. 1993). Transgressions of this duty may include, among other things, failing to diagnose an otherwise diagnosable medical condition or providing a patient with no reasonable disclosure of available choices of diagnosis and treatment, and the risks inherent in each. See Oliveros v. Abreu, 101 D.P.R. 209 (1973); Montes v. Fondo del Seguro del Estado, 87 D.P.R. 199 (1963). As to the requisite casual nexus, proof that a defendant's breach of duty increased a patient's risk of harm or diminished a patient's chances of recovery will suffice. See Santiago v. Hosp. Cayetano Colly Toste, 260 F.Supp.2d 373 , 380 (1st Cir. 2003); Rodriguez-Crespo v. Hernandez,121 D.P.R. 639 (1988).

In the instant case, Plaintiffs have shown the existence of material issues of fact. Specifically, Plaintiffs' sworn deposition testimony about Roman's walk-in visits to the GCHC between August 25, 2003 and September 3, 2004 directly controverts Co-defendant's evidence – also sworn deposition testimony – that Roman first visited the GCHC on September 3, 2004. Co-defendant urges the Court to consider the lack of entries on Roman's GCHC medical records documenting her walk-in visits as dispositive of this factual dispute. Co-defendant, however, has failed to direct the Court to evidence of record about the reliability or accuracy of GCHC's medical recordkeeping practices. Therefore, at this stage of the proceedings, where all reasonable inferences must be drawn on Plaintiffs' favor, the Court must infer that Roman's GCHC medical records contain no entries about her alleged walk-in visits because GCHC's employees failed to record them. If proven at trial, such recordkeeping deficiencies, on their

**Civil No. 08-1498(SEC)**

own, may provide Plaintiffs with a colarable claim under the FTCA, or, together with other evidence, allow Plaintiffs to establish the merits of their claims. Accordingly, at this juncture, the Court is unable to adjudicate Plaintiffs' and Co-defendant's dispute as a matter of law.

The Court's conclusion would be the same even if Co-defendant had proven that Roman's GCHC medical records accurately depicted all interactions with GCHC's staff. As stated above, Plaintiffs allege that GCHC doctors failed to inform them about treatment alternatives and risks associated with Roman's medical condition. Sworn deposition testimony by Roman and her mother support this allegation, and Roman's GCHC medical records are devoid of entries reflecting that such disclosures were given.  Co-defendant has provided no evidence about whether doctors at the GCHC were supposed to document on patients' medical records the act of giving these disclosures. Common sense would suggest such entries necessary to protect against the exact type of claim Plaintiffs raise here. Therefore, had Co-defendant carried its burden of proof as to the reliability of GCHC's recordkeeping practices, the Court, as it must at this procedural juncture, would have inferred that Roman's GCHC medical records lacked reference as to the necessary disclosures because GCHC's personnel failed to provide them. If proven at trial, this fact may strengthen Plaintiffs' claim against Co-defendants.

**Conclusion**

Because material controversies of facts abound in the record before the Court at this juncture, Co-defendant's Motion for Summary Judgment is **DENIED.**

**IT IS SO ORDER.**

In San Juan, Puerto Rico, this 16th day of September 2010.

*s/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge